UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RAJAPOOPATHY THARMABALAN et al.,              :

                                              :

                    Plaintiffs,               :        OPINION AND ORDER
                                              :        23 Civ. 3539 (GWG)
          -against-                           :

                                              :

ANTONY J. BLINKEN et al.,                     :

                    Defendants.               :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

        Rajapoopathy Tharmabalan ("Rajapoopathy") and Tharmika Tharmabalan ("Tharmika")

bring this action under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 et seq.;

the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq.; the Mandamus Act, 28

U.S.C. § 1361; and the Fifth Amendment, alleging that the United States Department of State

("State Department") improperly denied Tharmika's visa application.[1]  Plaintiffs seek

declaratory and injunctive relief reversing the State Department's decision, or in the alternative,

an order directing the State Department to reconsider Tharmika's application.  The Government

has moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[2]

---

        [1]  Plaintiffs filed the amended complaint twice on October 11, 2023. One filing (Docket # 18) contains the complaint only ("Am. Compl.").  The other filing (Docket # 19) adds the exhibits ("Supp. Exhibits").  While the docket entry for the latter filing indicates it was rejected by the Clerk's office, we consider the exhibits together with the amended complaint.

        [2]  See Notice of Motion, filed Nov. 20, 2023 (Docket # 27) ("Mot."); Declaration of Stephanie Woodard, filed Nov. 20, 2023 (Docket # 28) ("Woodard Decl."); Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, filed Nov. 20, 2023 (Docket # 29) ("Mem."); Plaintiffs' Memorandum of Law in Opposition, filed Jan. 22, 2024 (Docket # 40) ("Opp."); Reply Memorandum of Law, filed Mar. 4, 2024 (Docket # 45) ("Reply").

For the reasons set forth below, the Government's motion to dismiss plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) is granted.

I. <u>BACKGROUND</u>

Plaintiff Rajapoopathy is a Sri Lankan citizen and has lived in New York as a lawful permanent resident since October 13, 2015.  Am. Compl. ¶ 2.  Plaintiff Tharmika is Rajapoopathy's daughter and is also a citizen of Sri Lanka, where she currently resides.  <u>Id.</u> ¶¶ 2, 13; Opp. at 9.  Rajapoopathy and Tharmika began the process to obtain Tharmika's visa in March 2016.  Am. Compl. ¶¶ 2, 6.

The particular visa plaintiffs sought was a family-based immigrant visa as provided in section 203(a)(2)(A) of the INA.  <u>See</u> Am. Compl. ¶ 6; <u>see also</u> 8 U.S.C. § 1153(a)(2)(A).  The process to obtain such a visa has two steps.  <u>See</u> Mem. at 1-2.  First, an applicant and a sponsor must file a Form I-130 petition with United States Citizenship & Immigration Services ("USCIS").  <u>See</u> 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a), 1154(a)(1)(A); 8 C.F.R. § 204.1(a)(1); <u>see also</u> Am. Compl. ¶ 6; <u>accord</u> <u>Altowaiti v. Wolf</u>, 2021 WL 2941753, at *1 (S.D.N.Y. July 12, 2021).  After receiving this petition, USCIS will determine whether the requisite familial relationship exists between the applicant and the sponsor.  <u>See</u> 8 U.S.C. § 1154(b).  Once approved, the second step involves passing the petition to the National Visa Center ("NVC") and having the applicant file a separate application and undergo an interview at a United States consular office.  <u>See</u> 8 U.S.C. § 1202(a); 22 C.F.R. § 42.62; <u>see also</u> Am. Compl. ¶ 6; <u>accord</u> <u>Ahmed v. Bitter</u>, 2024 WL 22763, at *1 (E.D.N.Y. Jan. 2, 2024).  After the application has been considered by the consular officer, the officer will either issue the visa or deny the application. <u>See</u> 22 C.F.R. § 42.81(a); <u>see also</u> Am. Compl. ¶ 7.

On July 7, 2016, USCIS approved Tharmika's Form I-130 petition. See Am. Compl. ¶ 6. Her petition was then forwarded to the NVC "for preliminary processing." Id. ¶ 7. In connection with the processing, Tharmika's sponsor or a co-sponsor was required to submit an affidavit providing financial information "to demonstrate that the applicant Tharmika Tharmabalan would not become a public charge." Id. The sponsor or co-sponsor submitting the form is required to be "domiciled" in the United States. Id.; see 8 U.S.C. § 1183a(f)(l)(C). Because Rajapoopathy "had no income," her brother-in-law, Magaswaran Thiyagarajah, submitted an affidavit, affirming that he had an annual income of $96,840 the previous year. Am. Compl. ¶ 7.

Tharmika was scheduled for an interview, which took place on July 26, 2018, at the United States Embassy in Colombo, Sri Lanka. Id. ¶ 8(1).[3] Tharmika was not issued a visa following this interview. Id. Instead, the consulate requested "proof of residency." Id.; see Supp. Exhibits at *3 (Exhibit D).[4] While it was initially unclear whose residence was the subject of the request, on July 29, 2018, the consulate clarified that it sought proof of Rajapoopathy's residence. Am. Compl. ¶ 8(1); see Supp. Exhibits at *5 (Exhibit E). Since then, Rajapoopathy "has provided extensive documentation to the consulate confirming her continued residence in the United States including her New York State identification card, alien registration receipt card, bank statements, credit card statements[,] a residential lease and medical records." Am. Compl. ¶ 8(2).[5] According to the Government, the initial documents sent over on August 17,

_____

[3] The amended complaint has two paragraphs labeled as paragraph 8. We refer to the first of these paragraphs as "8(1)" and the second as "8(2)."

[4] "*__" refers to the page assigned by the ECF system.

[5] The complaint does not state when each of these records was sent to the consulate. A July 21, 2019 email reflects that Rajapoopathy had already sent over some of these documents — the residential lease, bank statement, credit card statement, New York State identification card,

2018 — U.S. bank account statements — were deemed insufficient to establish residency.  See
Woodard Decl. ¶ 10; Mem. at 4.

     At some point thereafter (the date is unspecified), Rajapoopathy and her husband "made a
temporary visit to Sri Lanka" following medical issues they both experienced.  See Am. Compl.
¶ 8(2).  In May 2019, while the couple was apparently still in Sri Lanka, Rajapoopathy received a
"call from the consulate asking her when she would be returning to the United States in order to
resume processing of her daughter's immigrant visa application."  Id.  The couple returned to the
United States on July 16, 2019.  Id.  Between July 18 and July 21, 2019, Rajapoopathy
exchanged several emails with the consulate asking whether additional proof of residence was
needed.  Id. ¶ 9; see Supp. Exhibits at *7-*10 (Exhibit F).  On July 21, 2019, the consulate
"advised that the officer reviewing the documents 'was not convinced,' but stated '[she] may
send similar documents after staying in the United States for few months.'"  Am. Compl. ¶ 9; see
Supp. Exhibits at *10.

     In response to the July 2019 emails, on "April 20, 2020," Rajapoopathy "confirm[ed] her
return and continuous presence in the United States since July 16, 2019," and attached additional
documentation — consisting of hospital invoices — to prove her residence.  Id. ¶ 10.[6]  The
consulate then advised "that the embassy was closed due to COVID and that applicants would be
advised when normal operations resumed."  Id. ¶ 11.  Rajapoopathy made further inquiries
"[f]ollowing resumption of normal operations at the consulate and the end to COVID related

_____

and hospital invoices — at an earlier date.  See Supp. Exhibits at *9 (Exhibit F).  Another email,
from April 21, 2020, reflects that the remainder of the documents had already been sent.  See id.
at *12 (Exhibit G).  The Government's filings indicate the residential lease was received by the
consulate on May 9, 2019.  See Woodard Decl. ¶ 11.

     [6]  The email attached to the complaint in fact bears a date of "April 21," not April 20.
See Supp. Exhibits at *12 (Exhibit G).

travel restrictions" from September 2021 to January 2023.  Id.; see Supp. Exhibits at *14-17 (Exhibit H).  The consulate did not respond to the April 20, 2020, submission until after this lawsuit was filed.  Id.

On April 27, 2023, plaintiffs filed the instant action.  See Complaint, filed Apr. 27, 2023 (Docket # 1).  On August 24, 2023, the consulate "issued a purported denial of the immigrant visa application under 8 U.S.C. §1182(a)(4)."  Am. Compl. ¶ 12.  The denial, which appears on a Government form, states that the reason for the denial is "Section 212(a)(4) which prohibits the issuance of a visa to anyone likely to become a public charge."  See Supp. Exhibits at *19 (Exhibit I).  On October 11, 2023, the plaintiffs filed an amended complaint reflecting that this denial had been issued.

On November 20, 2023, the Government filed the instant motion to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

II.  LEGAL STANDARD

A.  Fed. R. Civ. P. 12(b)(1)

"Federal courts are courts of limited jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  A case must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  The plaintiff carries "the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists."  Id.  When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based exclusively on the face of the complaint, "the district court must take all uncontroverted facts in the complaint (or

petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."
Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (citation
omitted).  If the parties dispute jurisdictional facts, "the court has the power and obligation to
decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  APWU
v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) (punctuation omitted) (quoting LeBlanc v. Cleveland,
198 F.3d 353, 356 (2d Cir. 1999)).

     B.  Fed. R. Civ. P. 12(b)(6)

     A party may move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) when the opposing
party's complaint "fail[s] to state a claim upon which relief can be granted."  While a court must
accept as true all of the factual allegations contained in a complaint, that principle does not apply
to legal conclusions.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his
entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do.") (punctuation and alterations omitted).  In other
words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
statements, do not suffice," Iqbal, 556 U.S. at 678, and a court's first task is to disregard any
conclusory statements in a complaint, id. at 679.

     Next, a court must determine if the complaint contains "sufficient factual matter" which,
if accepted as true, states a claim that is "plausible on its face."  Id. at 678 (punctuation omitted).
"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .  The
plausibility standard is not akin to a probability requirement, but it asks for more than a sheer
possibility that a defendant has acted unlawfully."  Id. (punctuation omitted).  "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a

complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not

"'show[n]' . . . 'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

III.  DISCUSSION

The Government's primary argument on its motion to dismiss is that this case is non-

justiciable.  See Mem. at 8.  In particular, the Government argues that the doctrine of consular

nonreviewability deprives the Court of jurisdiction.  See id.  Plaintiffs make two arguments in

response.  First, they argue that the consular nonreviewability doctrine is non-jurisdictional.  See

Opp. at 10-12.  Second, plaintiffs argue that the doctrine is inapplicable either because their

claims fall within an exception or because plaintiffs do not challenge the consular officer's final

decision.  See id. at 12-16.

A.  Consular Nonreviewability

The doctrine of consular nonreviewability is "the principle that a consular officer's

decision to deny a visa is immune from judicial review."  Am. Acad. of Religion v. Napolitano,

573 F.3d 115, 123 (2d Cir. 2009).  The Second Circuit has stated that the doctrine implicates

"jurisdiction."  See Hsieh v. Kiley, 569 F.2d 1179, 1181 (2d Cir. 1978) ("[N]o jurisdictional

basis [exists] for review of the action of the American Consul . . . suspending or denying the

issuance of immigration visas . . . .").  Nonetheless, it has also suggested that subject matter

jurisdiction exists over certain claims regarding consular action under 28 U.S.C. § 1331, the

federal question statute.  See Am. Acad. of Religion, 573 F.3d at 123.  As one case has

characterized the case law, "[t]he Second Circuit has expressed doubt as to whether the doctrine

rests on a lack of 'subject matter jurisdiction' in a formal sense, and has instead suggested that it

may involve a withdrawal of such jurisdiction or even prudential concerns."  Gogilashvili v.

Holder, 2012 WL 2394820, at *3 (E.D.N.Y. June 25, 2012) (citing Am. Acad. of Religion, 573

F.3d at 123); see Anupama Deupathy Hettiarachchige v. Bitter, 2022 WL 17738771, at *2

(S.D.N.Y. Dec. 16, 2022) ("The Second Circuit has not been clear as to whether consular

nonreviewability is a jurisdictional question or a prudential consideration."); accord Abdo v.

Tillerson, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019).  Whatever the basis, the doctrine

"precludes judicial review of 'a consular officer's decision to deny a visa.'"  Asmah v. US

Consulate Accra Ghana, 2016 WL 2993203, at *2 (S.D.N.Y. May 23, 2016) (quoting Lleshi v.

Kerry, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015)).

        In other contexts, the Second Circuit has made plain that it is appropriate to dismiss a

case on justiciability grounds without reaching the issue of subject matter jurisdiction.  See Can

v. U.S., 14 F.3d 160, 162 n.1 (2d Cir. 1994) ("[W]here, as appears to be true here, justiciability

may be a less knotty question than [subject matter] jurisdiction, we think it not inappropriate to

begin by examining that question.").  Given the view that the consular nonreviewability doctrine

rests on "justiciability" concerns, see, e.g., Bamdad v. U.S. Dep't of State et al., 2024 WL

1462948, at *3 (W.D. Tex. Feb. 9, 2024) ("consular nonreviewability applies and makes this

action non-justiciable"); see also Trump v. Hawaii, 585 U.S. 667, 682 (2018) (equating consular

nonreviewability with justiciability), we conclude that review of the claim here would not

implicate subject matter jurisdiction.  We note that courts have dismissed claims raising the

doctrine pursuant to Fed. R. Civ. P. 12(b)(6) rather than 12(b)(1).  See Del Valle v. Sec'y of

State, United States Dep't of State, 16 F.4th 832, 843, 838 (11th Cir. 2021) ("[W]hen the

doctrine of consular non-reviewability bars review of a consular official's decision, a district

court should dismiss a suit challenging the decision under Rule 12(b)(6)."); see generally

Chhabra v. Blinken, 2022 WL 17587850, at *1 (2d Cir. Dec. 13, 2022) (affirming lower court

decision to dismiss action pursuant to Fed. R. Civ. P. 12(b)(6), because "[p]laintiffs' claim is barred under the doctrine of consular nonreviewability").

    B.  <u>Whether the Consular Nonreviewability Doctrine Applies</u>

As discussed above, under the consular nonreviewability doctrine, "a consular officer's decision to deny a visa is immune from judicial review." <u>Am. Acad. of Religion</u>, 573 F.3d at 123. Plaintiffs make two arguments that the doctrine is inapplicable. First, plaintiffs argue that their case falls within the narrow exception to the consular nonreviewability doctrine for cases raising certain constitutional violations. <u>See</u> Opp. at 12-14; <u>see also</u> <u>Kleindienst v. Mandel</u>, 408 U.S. 753 (1972). Second, plaintiffs argue that their requested review of the consular officer's decision is not directed at the "denial" of a visa but rather at (1) the consular officer's undue delay in rendering a decision on the application and (2) its failure to consider additional evidence proving Rajapoopathy's residence. <u>See</u> Opp. at 14-16.

We consider these arguments next.

    1.  <u>Constitutional Exception</u>

The Supreme Court in <u>Kleindienst v. Mandel</u>, 408 U.S. 753 (1972), suggested there was a narrow exception to the doctrine of consular nonreviewability in order to vindicate what the lower court identified as "the rights of the citizens of the country" to hear the views of a foreign national. <u>Id.</u> at 764 (citation omitted); <u>accord</u> <u>United States v. Saipov</u>, 412 F. Supp. 3d 295, 300 (S.D.N.Y. 2019) (<u>Mandel</u> allowed for a "narrow exception" to the consular nonreviewability doctrine "relating to claims by United States citizens alleging violations of their First Amendment association rights based on the denial of visas to foreign nationals.") (citing <u>Xian Yong Zeng v. Pompeo</u>, 740 F. App'x 9, 10 (2d Cir. 2018)). As the Supreme Court recently stated in <u>Trump v. Hawaii</u>, 585 U.S. 667 (2018), "[a]lthough foreign nationals seeking admission

have no constitutional right to entry, this Court has engaged in a circumscribed judicial inquiry

when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." Id. at 670.

This inquiry permits an examination only of whether the Government provided a "facially

legitimate and bona fide reason" for its denial of a visa.  Id. at 703 (citation omitted); accord Am.

Acad. of Religion, 573 F.3d at 125 (2d Cir. 2009).[7]

Here, plaintiffs' reliance on this exception fails because plaintiffs are not United States

citizens.  See Am. Compl. ¶ 2.  Courts routinely dismiss constitutional challenges brought by

non-citizens seeking to rely on the exception.  See Abdo, 2019 WL 464819, at *4 ("[B]ecause

neither [plaintiff] is a United States citizen, the sole exception to the doctrine — which applies

where a U.S. citizen has brought a constitutional claim — is not applicable."); Saipov, 412 F.

Supp. 3d at 301 (doctrine does not apply because "Saipov is not a United States citizen"); Islam

v. Melisa, 2018 WL 6067503, at *4 (E.D.N.Y. Nov. 20, 2018) ("[T]his limited exception does

not apply in the instant action as plaintiff is not a United States citizen."); Lleshi v. Kerry, 127 F.

Supp. 3d 196, 201 (S.D.N.Y. 2015).

Plaintiffs argue that the focus of the analysis should be on the constitutional right at

issue, rather than a party's citizenship, and that the Fifth Amendment Due Process Clause speaks

of "person[s]" rather than "citizens."  Opp. at 12-13.  They note that other Supreme Court cases

have recognized that "long term permanent residents . . . are those most akin to United States

citizens."  Id. at 13 (citing Mathews v. Diaz, 426 U.S. 67, 79-80 (1976)).  These arguments,

however, fail to grapple with the clear pronouncements from the Supreme Court and the Second

---

[7]  The Second Circuit has "not decided whether this narrow exception to the consular
nonreviewability doctrine applies to constitutional challenges other than First Amendment
challenges, such as due process challenges."  Xian Yong Zeng, 740 F. App'x at 11 (citations
omitted); accord Saipov, 412 F. Supp. 3d at 300 n.4.

Circuit that the exception is only applicable to constitutional claims brought by United States citizens.  See Trump, 585 U.S. at 670 ("Although foreign nationals seeking admission have no constitutional right to entry, this Court has engaged in a circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen."); accord Burrafato v. U.S. Dep't of State, 523 F.2d 554, 556-57 (2d Cir. 1975) ("The significant distinguishing feature of the instant case is that no constitutional rights of American citizens over which a federal court would have jurisdiction are 'implicated' here.").  Unsurprisingly, the cases cited by plaintiffs, see Opp. at 12-13, either involve challenges brought by U.S. citizens, see, e.g., Kerry v. Din, 576 U.S. 86 (2015); Del Valle v. Secretary of State, United States Department of State, 16 F.4th 832 (11th Cir. 2021), or address issues unrelated to consular nonreviewability, see, e.g., Zadvydas v. Davis, 533 U.S. 678 (2001) (detention of aliens and habeas review); Mathews v. Diaz, 426 U.S. 67 (1976) (social security).

Accordingly, plaintiffs' claims do not fall within the limited exception to the consular nonreviewability doctrine.

### 2.  Delay and Reconsideration

Plaintiffs argue that the consular nonreviewability doctrine is inapplicable to their claims because they are not challenging the consular officer's "decision to deny a visa."  See Opp. at 14-16.  Rather, plaintiffs contend that they are challenging (1) the consular officer's delay in rendering a decision and (2) the consular officer's failure to reconsider "further evidence" pursuant to 22 C.F.R. § 42.81(e).  See id.

As to the consular officer's delay, "[c]ourts in this Circuit have applied the doctrine of consular nonreviewability to unreasonable delay claims under the APA and unreasonable delay claims under the Mandamus Act."  Nawaz v. United States Dep't of State, 2024 WL 99486, at *4

(E.D.N.Y. Jan. 9, 2024); <u>Abdo</u>, 2019 WL 464819, at *4 ("[T]he doctrine applies with full force

where, as here, a plaintiff seeks to compel an official to simply adjudicate a visa application.")

(citation and quotation marks omitted); <u>Anupama Deupathy Hettiarachchige</u>, 2022 WL

17738771, at *2 (plaintiffs' argument that a claim of undue delay is distinguishable from a

challenge to the consular officer's decision constitutes "a distinction without difference in the

Second Circuit").  In any event, plaintiffs cannot seek relief for consular delay because the

consular officer has in fact issued a final decision notwithstanding the prior delay.  <u>See</u> Am.

Compl. ¶ 12.  As a result, any claim regarding the delay in processing the application is moot.

<u>See</u> <u>generally</u> <u>Altowaiti v. Cissna</u>, 2020 WL 2036703, at *4 (S.D.N.Y. Apr. 28, 2020)

("[B]ecause the petitions have inarguably been adjudicated . . . an order directing USCIS to

adjudicate the petitions, or even a declaration that such adjudication was not timely, would have

little direct impact on Plaintiffs.").

     As to the alleged failure to reconsider Tharmika's visa application, plaintiffs point to 22

C.F.R. § 42.81(e), which provides:

> If a visa is refused, and the applicant within one year from the date of refusal
> adduces further evidence tending to overcome the ground of ineligibility on which
> the refusal was based, the case shall be reconsidered.  In such circumstance, an
> additional application fee shall not be required.

The Government seems to argue the refusal that triggered the one-year period in the regulation

occurred on August 17, 2018, <u>see</u> Mem. at 10, though it also appears to contend that the consular

officer "refused the D-260 visa application" on July 26, 2018, <u>see</u> Woodard Decl. ¶ 9.  The

plaintiffs assert that the only legally proper refusal occurred on August 23, 2023, because this

was the only refusal that provided "written notice of the ground of inadmissibility rendering

Tharmika Tharmabalan ineligible for an immigrant visa" as required by 8 U.S.C. § 1182(b)(1).

<u>See</u> Opp. at 15.  We accept plaintiffs' contention on this point in light of the Government's

failure to point to any other written notice of a denial that lists a specific provision being relied

on as required by the statute.  We will also assume, <u>arguendo</u>, that a failure to comply with 22

C.F.R. § 42.81(e) is properly the subject of a writ of mandamus if the Government refused to re-

consider the denial or insisted on "an additional application fee" to perform such reconsideration.

No relief is available here, however, because there is no allegation in the complaint that the

plaintiffs adduced further evidence after August 23, 2023, or that any fee has been required of

them as a prerequisite to considering the additional evidence.  Plaintiffs' contention that the

Government failed to consider the hospital records sent on April 20, 2020, <u>see</u> Am. Compl. ¶ 18,

does not satisfy the regulation because the records were submitted before the August 23, 2023,

denial.

Accordingly, the complaint fails to state a claim upon which relief can be granted.[8]

Conclusion

For the foregoing reasons, the Government's motion to dismiss pursuant to Fed. R. Civ.

P. 12(b)(6) (Docket # 27) is granted. The Clerk is requested to enter judgment.

Dated: April 29, 2024
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[8]  Because the case must be dismissed even accepting all allegations of the complaint as true, there is no ground for granting plaintiffs' request for limited discovery.  <u>See</u> Opp. at 12. The case plaintiffs cite for this proposition, <u>see</u> <u>Munoz v. United States Dep't of State</u>, 2019 WL 1455317 (C.D. Cal. Apr. 2, 2019), involved a discovery dispute that arose after the court denied the Government's motion to dismiss.  In any case, plaintiffs provide no reason why any discovery would allow them to overcome the legal doctrines that bar their claims.